**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 31, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JEANIE BISCONTE,

    Plaintiff - Appellant,

v.

SANDIA NATIONAL LABORATORIES;
JOHN MOUNHO, in his individual and
official capacity; EDWARD SAUCIER, in
his individual and official capacity,

    Defendants - Appellees.

No. 21-2133
(D.C. No. 1:21-CV-00462-KWR-KK)
(D.N.M.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **PHILLIPS**, **MORITZ**, and **EID**, Circuit Judges.

_____

Jeanie Bisconte brought state-law claims for discrimination and retaliation

against her former employer, Sandia National Laboratories, and two of her managers,

John Mounho and Edward Saucier.[1] The district court first determined that it could

exercise federal subject-matter jurisdiction over those claims because they arose from

events that occurred on a federal enclave. But as a result, the district court also

granted summary judgment for Sandia under the federal-enclave doctrine because

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).
    [1] We refer to these three defendants collectively as "Sandia."

Bisconte's claims derived from state law adopted after the enclave's creation. Bisconte appeals the jurisdictional ruling and the disposition of her claims in the judgment. We affirm for the reasons below.

## Background

Bisconte worked for Sandia, a national science and engineering laboratory, for over a decade as a software systems engineer. Sandia operates predominately on the Kirtland Air Force Base, a federal enclave acquired by the United States from New Mexico in 1954.[2] Sandia also maintains facilities at the Innovation Parkway Office Center, which is located outside the enclave. Under the terms of a telecommute agreement, Bisconte worked remotely at all times relevant to this suit, performing her duties either from her home or the Innovation Parkway Office Center.

During the initial years of her employment, Bisconte alleges that she "advanced greatly in role and responsibility" and received two promotions. App. 15. Bisconte asserts that shortly after her second promotion, however, Sandia began discriminating against her in various ways. According to Bisconte, she first raised concerns with her then-manager and with human resources that she was underpaid relative to her male peers, but human resources denied her request for a salary increase. Three years later, Bisconte filed another complaint with human resources, this time alleging that Mounho, her manager at the time, harassed and discriminated

---

[2] As explained more fully later, a federal enclave is property that a state has ceded to the federal government and that is subject to Congress's "exclusive legislative authority." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012).

against her; she also generally asserted that Sandia failed to pay and promote women on par with men. Bisconte later filed multiple complaints, both internally and with New Mexico state agencies, alleging gender discrimination, disability discrimination, and retaliation.

While these complaints were pending, Bisconte met with a medical case manager on the base about her disability. According to the case manager's affidavit, Bisconte informed the case manager that she was unable to work because of her disability and thus "requested that she be separated from Sandia." *Id.* at 34. The case manager reported that during the meeting, Bisconte requested disability benefits before separation, and Sandia approved her request later that day. After about eight months on leave with disability benefits, Bisconte was formally separated from the company.[3]

Bisconte then sued Sandia in state court, bringing state-law claims for violation of the New Mexico Human Rights Act, violation of the New Mexico Fair Pay for Women Act, and breach of implied contract. Sandia removed the case to federal court, alleging that Bisconte's claims were subject to federal subject-matter jurisdiction because they arose from events that occurred on a federal enclave (Kirtland Air Force Base). Repeating its assertion that federal-enclave jurisdiction applied, Sandia then moved to dismiss Bisconte's state-law claims as barred by the

---

[3] The parties dispute whether Bisconte was terminated at this point or merely removed from payroll after exhausting her disability benefits. Because this dispute is not relevant to our disposition, we need not resolve it.

federal-enclave doctrine. *See Allison*, 689 F.3d at 1237 (explaining that this doctrine generally bars claims (1) arising from events on federal enclave and (2) based on state law adopted after enclave's creation). Bisconte responded by moving to remand and by opposing Sandia's motion to dismiss, arguing in both filings that the district court lacked federal-enclave jurisdiction because she worked outside the base.

Addressing the motion to remand first, the district court agreed with Sandia that federal-enclave jurisdiction was proper because Sandia's acts giving rise to Bisconte's claims occurred on the base. When denying Bisconte's remand motion, the district court also converted Sandia's motion to dismiss into one for summary judgment—because the parties' briefing cited evidence outside the complaint—and allowed the parties to submit additional materials on the federal-enclave issue.[4] Based on these new materials, the district court issued a summary-judgment order reconsidering whether federal-enclave jurisdiction existed. After concluding that it did, the district court held that Bisconte's state-law claims were barred by the federal-enclave doctrine because they were based on state-law causes of action recognized after the enclave's creation. The district court therefore granted summary judgment for Sandia and dismissed Bisconte's claims with prejudice. Bisconte appeals.

---

[4] The district court did not convert the remainder of Sandia's motion to dismiss, which asserted alternative reasons for dismissal, into a motion for summary judgment. And given its ultimate ruling on the federal-enclave issue, the district court did not reach these alternative arguments.

**Analysis**

Bisconte raises two issues on appeal. First, she challenges the district court's conclusion that her claims arose on the base and therefore triggered federal-enclave jurisdiction. Second, she argues that even if the district court properly asserted jurisdiction over her claims, it improperly disposed of those claims in the judgment. We consider those issues in turn.

## I.    Federal-Enclave Jurisdiction

Whether Bisconte's claims arose on the base is a jurisdictional issue.[5] *See Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022) ("State-law 'actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal[-]question jurisdiction.'" (quoting *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998))), *petition for cert. filed* (U.S. June 8, 2022) (No. 21-1550). We review that issue de novo. *Id.* at 1250. To the extent Bisconte's argument on this jurisdictional issue requires us to assess the district court's summary-judgment decision, we also review that decision de novo. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 984 (10th Cir.

---

[5] We note that the district court addressed this jurisdictional issue twice, first in the order denying remand and then again in the summary-judgment order after Bisconte submitted additional materials on the issue. Although the district court did not explicitly state that it was reconsidering the earlier jurisdictional ruling in its summary-judgment order, the substance of the district court's analysis shows that it did just that—it assessed whether Bisconte's claims arose on the base, which is the focus of the parties' dispute on appeal. Thus, we treat the issue before us as jurisdictional, even though it comes to us in an appeal from a summary-judgment order.

2021). "Summary judgment is only appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

The jurisdictional issue at the heart of this appeal derives from the Constitution's Enclave Clause, U.S. Const. art. I, § 8, cl. 17, which "empowers Congress to exclusively regulate properties acquired from state governments." *Allison*, 689 F.3d at 1236. Given this exclusive authority, these properties—known as federal enclaves—are typically governed by federal law. *Id.* State law adopted before the enclave's creation also remains in force; but subject to certain exceptions not relevant here, state law adopted after the enclave's creation does not. *Id.* at 1236–37. In line with these principles, federal courts have jurisdiction to adjudicate claims that arise from incidents occurring on federal enclaves: this is known as federal-enclave *jurisdiction*. *See Suncor*, 25 F.4th at 1271; *City of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022) (explaining that federal-enclave jurisdiction exists when alleged injury "occurred on" or "stemmed from conduct on" enclave). And under such jurisdiction, any claims based on state-law causes of action recognized after the enclave's creation are typically barred: this is known as the federal-enclave *doctrine*. *Allison*, 689 F.3d at 1235.

Here, Bisconte does not dispute that Kirtland Air Force Base is a federal enclave and that the state laws underlying Bisconte's claims were not adopted until after Congress acquired the base in 1954—that is, she does not dispute that the

6

federal-enclave *doctrine* would bar her claims. Instead, she argues only that her claims did not arise on the base, such that federal-enclave *jurisdiction* does not exist.

We recently considered and clarified the standard for whether a claim arose on a federal enclave in *Suncor*, 25 F.4th 1238. There, the plaintiffs asserted state-law claims against several fossil-fuel companies for their role in causing climate change. *Id.* at 1248. The companies argued that these claims qualified for federal jurisdiction because the plaintiffs alleged that the companies' worldwide fossil-fuel business caused environmental damage over a large geographic area, including property within a federal enclave. *Id.* at 1271. We rejected this "all-encompassing theory," explaining that federal-enclave jurisdiction generally requires that "'*all* pertinent events'" take place on a federal enclave.[6] *Id.* at 1271–72 (quoting *Rosseter v. Indus. Light & Magic*, No. C 08-04545, 2009 WL 210452, at *1 (N.D. Cal. Jan. 27, 2009)).

Without the benefit of our recent authority, the district court relied on several district-court opinions to conclude that the relevant inquiry is either the place where the harm occurred or, in employment cases, "the place where the adverse employment decisions were made." App. 124. Under either approach, the district court reasoned, Bisconte's state-law claims arose on the enclave. Specifically, the

---

[6] In *Suncor*, we also cited authority for the proposition that federal-enclave jurisdiction is proper when "all or most" of the pertinent events occurred on the enclave. 25 F.4th at 1272 (quoting *Mayor of Balt. v. BP, P.L.C.*, 388 F. Supp. 3d 538, 565 (D. Md. 2019), *aff'd*, 952 F.3d 452 (4th Cir. 2020), *rev'd on other grounds*, 141 S. Ct. 1532 (2021)). Here, we need not decide whether federal-enclave jurisdiction is also proper if "most" pertinent events occur on an enclave because we ultimately resolve this appeal based on the all-pertinent-events standard.

district court concluded that the alleged harm occurred on the federal enclave because Bisconte submitted her request for disability leave on the base, the computer servers hosting Bisconte's remote work were located on the base, and Bisconte was either terminated or resigned during a meeting on the base. And the district court concluded that all relevant decision- and policy-making occurred on the base.

Resisting this conclusion on appeal, Bisconte contends that the location of decision-making is only one factor to consider and urges this court to look to the place where she *experienced* the alleged harm—which she contends took place outside the enclave given that she worked exclusively off base.[7] Bisconte also points to evidence that she signed a document terminating her security clearance off the base. Sandia, on the other hand, argues that the key inquiry is the location of decision-making and maintains that the district court correctly concluded that Sandia's key decisions and administration of relevant policies occurred on the base.

---

[7] In support, Bisconte relies on a New Mexico choice-of-law doctrine, *lex loci delicti commissi*—in English, "[t]he law of the place where the tort or other wrong was committed." *Lex loci delicti*, Black's Law Dictionary (11th ed. 2019). In the tort-law context, this doctrine looks to the place where the wrong occurred, which is the "location of the last act necessary to complete the injury." *Torres v. New Mexico*, 894 P.2d 386, 390 (N.M. 1995) (quoting *Wittkowski v. New Mexico*, 710 P.2d 93, 95 (N.M. Ct. App. 1985)). We question whether it is appropriate to apply a state choice-of-law doctrine in this context, especially given that the federal-enclave doctrine itself operates as a choice-of-law doctrine. *Allison*, 689 F.3d at 1235 ("Federal[-]enclave doctrine operates as a choice[-]of[-]law doctrine that dictates which law applies to causes of action arising on [federal enclaves]."). In any event, we need not decide the relevancy of state choice-of-law doctrines in the federal-enclave context because, as we will explain, our recent precedent provides sufficient guidance to resolve this appeal.

We need not delve too deeply into the nuances of this dispute because it is clear from our review of the record that all *pertinent* events occurred on the Kirtland Air Force Base. *See Suncor*, 25 F.4th at 1271. And here, in this employment case, the pertinent events are Sandia's alleged acts of misconduct that gave rise to Bisconte's claims. *See Allison*, 689 F.3d at 1235 (noting that plaintiff's employment retaliation claims "arose from *conduct* on Kirtland Air Force Base" (emphasis added)); *Sunoco*, 39 F.4th at 1111 (explaining that federal-enclave jurisdiction exists when plaintiff's alleged injury "occurred on" or "stemmed from *conduct* on a federal enclave" (emphasis added)). Specifically, Bisconte's complaint confirms that the alleged misconduct that gave rise to her injury is Sandia's failure to pay and promote women on par with men, retaliation for reporting misconduct, discrimination and termination based on gender and disability, and breach of internal policies designed to protect employees from discrimination and retaliation. As the district court determined, these alleged acts of misconduct occurred on a federal enclave because they involved actions taken, decisions made, and policies developed by Sandia's managers and executives who worked on the Kirtland Air Force Base.[8]

We emphasize that our inquiry centers on the location of all *pertinent* events. *See Suncor*, 25 F.4th at 1271. Thus, we do not consider minor facts that are tangential to Bisconte's claims, such as the location of computer servers, the location where

---

[8] Although the district court did not have the benefit of *Suncor*, the district court's analysis shows that it considered the location of all pertinent events—that is, the location where Sandia's alleged acts of misconduct giving rise to Bisconte's claims occurred.

Bisconte surrendered her security clearance, or the location of any other stray event. Simply put, these facts are not pertinent because they do not relate to conduct that gave rise to Bisconte's employment-law claims. *See Allison*, 689 F.3d at 1235. Nor is it pertinent that Bisconte experienced her injury outside the base. Rather, the pertinent event here is the conduct from which those injuries allegedly stemmed—conduct that occurred on the base. *See id.*; *Sunoco*, 39 F.4th at 1111. For these reasons, we hold that the district court properly exercised federal-enclave jurisdiction over Bisconte's state-law claims. And because those claims undisputedly depend on state law adopted after the enclave's formation, the federal-enclave doctrine bars them.[9] *See Allison*, 689 F.3d at 1235.

## II.    Disposition of Bisconte's Claims

Bisconte next argues that the district court erred by not expressly limiting its judgment to her state-law claims. Bisconte acknowledges that the district court's summary-judgment order includes such a limitation, but she contends that the accompanying judgment does not similarly limit the scope of dismissal. Specifically, Bisconte observes that the judgment dismisses "all claims" against Sandia, and she

---

[9] In her reply brief, Bisconte notes that Sandia cites New Mexico law in its policies and procedures, which she asserts should foreclose application of the federal-enclave doctrine. Bisconte waived this argument by failing to raise it in her opening brief. *See Singh v. Cordle*, 936 F.3d 1022, 1041 n.6 (10th Cir. 2019). Even if we considered this argument, however, we would not deem it relevant to our analysis for the reasons explained above.

asserts that such broad language bars her from asserting potentially viable federal claims in the future. App. 131.

This argument is unpersuasive. As Bisconte herself observes, the district court's opinion expressly limits dismissal to her state-law claims, and the judgment merely effects such disposition. Indeed, the judgment specifically references the district court's opinion and limits disposition to all claims asserted in "this action." *Id.* Because Bisconte asserted only state-law claims in this action, which were the only claims addressed in the district court's decision, the judgment does not dispose of unasserted federal claims.[10] Thus, we see no error in the district court's judgment.[11]

Relatedly, and as a final matter, Bisconte maintains that the district court's failure to limit the judgment to her state-law claims may prevent her from asserting federal claims in the future on the grounds of issue or claim preclusion. But to the extent Bisconte seeks a decision from this court as to whether issue or claim preclusion would bar her potential federal claims, that question is not ripe for review because it is contingent on Bisconte asserting federal claims in the future and a court

---

[10] Because Bisconte's argument fails on the merits, we need not address Sandia's alternative argument that Bisconte waived this argument by not raising it in the district court.

[11] In her opening brief, Bisconte also argued that dismissal with prejudice violated her due-process and equal-protection rights. But in her reply brief, she conceded that this argument "is not properly before the [c]ourt for appeal." Rep. Br. 6. We therefore treat this issue as abandoned and do not address it. *See Helm v. Kansas*, 656 F.3d 1277, 1287 n.8 (10th Cir. 2011) (refusing to consider claim that party abandoned on appeal).

11

dismissing them on preclusion grounds. *See Wyoming v. Zinke*, 871 F.3d 1133, 1142 (10th Cir. 2017) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1238 (10th Cir. 2013))).

## Conclusion

Because all pertinent events giving rise to Bisconte's state-law claims occurred on the Kirtland Air Force Base, the district court properly exercised federal-enclave jurisdiction. And because those claims rely on state law adopted after the enclave was created, they are barred by the federal-enclave doctrine. For this reason, we affirm the district court's decision granting summary judgment to Sandia. We also conclude that the district court properly disposed of Bisconte's state-law claims.

Entered for the Court

Nancy L. Moritz
Circuit Judge