FILED
United States Court of Appeals
Tenth Circuit

November 14, 2025

Christopher M. Wolpert
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

C&M RESOURCES, LLC; WINTER
OIL, LLC, individually and on behalf
of all others similarly situated,

     Plaintiffs - Appellants,

v.                                                                No. 24-1311

EXTRACTION OIL AND GAS, INC.,
f/k/a Extraction Oil & Gas, LLC,

     Defendant - Appellee.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:24-CV-00037-NYW-MEH)**

_____

Stacy Ann Burrows (George Barton, with her on the briefs) of Barton and
Burrows, Mission, Kansas, for Plaintiffs-Appellants.

Eric D. Walther of Brownstein Hyatt Farber Schreck, Las Vegas, Nevada
(Justin L. Cohen, Matthew C. Arentsen, and Craig M. Finger, Denver,
Colorado, with him on the brief), for Defendant-Appellee.

_____

Before **CARSON**, **EBEL**, and **FEDERICO**, Circuit Judges.

_____

**FEDERICO**, Circuit Judge.

_____

This appeal arises from Plaintiffs-Appellants C&M Resources, LLC, and Winter Oil, LLC's (Royalty Owners) contention on behalf of a putative class that Defendant-Appellee Extraction Oil and Gas, Inc. underpaid royalties owed based on oil and natural gas production agreements. But the issue of liability is not before us because the case didn't get to trial. Rather, the district court granted judgment on the pleadings and dismissed the putative class action complaint without prejudice. Before dismissing, the district court also denied Royalty Owners' motion to remand the complaint back to state court, where it was initially filed.

On appeal, Royalty Owners contest both decisions. Regarding the remand denial, they argue that Extraction untimely removed the case from state to federal court. Regarding dismissal, they argue that they are not collaterally estopped by prior state court rulings that held they are required to exhaust their claims before a state commission before filing suit. We are not persuaded by Royalty Owners' arguments. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

This dispute is anything but new. Indeed, this case represents the third putative class-action complaint Royalty Owners have filed in Colorado state court alleging the same harm arising from the same set of facts. The first two complaints were dismissed for failure to exhaust administrative remedies.

2

That is, the state trial courts determined that they lacked subject matter jurisdiction because Royalty Owners filed their complaints without first seeking an administrative resolution before the Colorado Oil and Gas Conservation Commission (the Commission), as required by statute.[1] On neither dismissal did Royalty Owners appeal the court's decision.

Royalty Owners filed the present iteration of the case in 2019. The parties then jointly moved for a stay of the proceeding pending resolution of a separate case by the Colorado Supreme Court: *Antero Resources Corp. v. Airport Land Partners, Ltd,* 526 P.3d 204 (Colo. 2023), which the parties anticipated would shed light on the administrative exhaustion requirement. The state trial court entered the stay in March 2020. Approximately three months later, Extraction notified the state court that it had filed for bankruptcy under 11 U.S.C. § 101, *et seq.*, in Delaware bankruptcy court. Then, in August of the same year, Royalty Owners filed on the Delaware bankruptcy docket a proof of claim detailing the existence of the state court litigation. In that filing, Royalty Owners valued the state-court litigation at $30 million.

---

[1] The Colorado legislature has granted the Commission – which has recently been renamed as the Colorado Energy & Carbon Management Commission – jurisdiction to resolve certain factual disputes pertaining to oil and gas payments. *See* Colo. Rev. Stat. § 34-60-101, *et. seq*. But the statute expressly exempts questions of contractual interpretation from the Commission's purview. *Id.* § 34-60-118.5(5.5). The parties dispute whether that exemption is applicable here.

Two and a half years passed. Then, the Colorado Supreme Court decided *Airport Land*. In May 2023, the state trial court lifted its stay in this matter. In December 2023, discovery production began. From discovery, Extraction determined that the amount in controversy was greater than $5 million, a statutory requirement for removal to federal court of this type of suit. As discussed below, Extraction then removed the case to federal court. After removal, Extraction filed an answer to the operative complaint. The answer included the affirmative defense that Royalty Owners' claims were barred by res judicata or issue preclusion.

## II

On January 5, 2024, Extraction removed the operative third-amended complaint to federal court based on diversity jurisdiction. Because the complaint was brought on behalf of a putative class, Extraction removed pursuant to the Class Action Fairness Act of 2005 (CAFA). *See* 28 U.S.C. § 1332(d). CAFA required Extraction to show, *inter alia*, the existence of a minimum amount in controversy to be in excess of $5 million. *See id.* § 1332(d)(2).

The notice of removal stated that "[n]one of the complaints in this lawsuit have identified an amount in controversy or made a demand for a specific amount of money." Aplt. App. I at 48. While maintaining a denial of liability, Extraction estimated based on a "review and analysis of records" provided in

4

discovery that the amount in controversy was greater than the statutorily required $5 million. *Id.* at 49. Extraction also stated that it "first discovered" the evidence supporting this estimate "within the last 30 days, while preparing to respond to Royalty Owners' First Set of Discovery Requests." *Id.*

Royalty Owners moved for a remand back to state court. In support, they presented two arguments: first, that Extraction had waived its right to removal by engaging in substantive state-court litigation; and second, that the notice of removal was filed outside of the 30-day timeline set by statute. *See* 28 U.S.C. § 1446(b). Extraction responded in opposition and, contemporaneously, filed a motion for judgment on the pleadings.

The district court began its analysis by determining that it should decide the removal issue first, followed by the merits issue. When considering the remand motion, the district court disregarded the bankruptcy proof of claim that Royalty Owners argued had put Extraction on notice of the amount in controversy when filed in August of 2020. It did so because the proof of claim was not referenced in Royalty Owners' motion for remand but was raised for the first time in its reply. The district court found that it had discretion to disregard this later-arriving argument and evidence and decided to exercise that discretion to not consider the proof the claim. The district court then found that Extraction's analysis of the records produced in discovery in December 2023 began the 30-day removal clock. The district court held that Extraction

5

had met its burden to justify removal, so it denied Royalty Owners' remand motion.

The district court then turned to the motion for judgment on the pleadings and held that collateral estoppel applied. The district court reasoned that because the state court had twice held that Royalty Owners had failed to exhaust their administrative remedies – and because Royalty Owners had neither done so nor appealed the prior determinations – Colorado's jurisdiction-stripping statute applied. The district court granted Extraction's motion for judgment on the pleadings.

Extraction had also requested a litigation sanction in the form of dismissal with prejudice, which the district court declined to grant. It noted that dismissal for lack of subject matter jurisdiction is typically without prejudice. But it also acknowledged Extraction's argument "that Plaintiffs disregarded clear court orders by refiling their case twice without correcting the identified defect, which does reflect a level of disregard for the state courts and their rulings." Aplt. App. V at 185. The district court concluded that there was not clear and convincing evidence warranting dismissal with prejudice. However, the district court added, in bold and underlined font:

> Plaintiffs are advised that if they choose to file a fourth iteration of this case without exhausting their administrative remedies before the Commission, and the case reaches federal court, there exists the possibility that the presiding judge may dismiss their case *with* prejudice as a sanction for litigation misconduct.

6

*Id.* at 186. Royalty Owners timely appeal.

### III

Before we consider the merits of the appeal, we must be satisfied with our power to decide the case. Congress has granted us jurisdiction to hear "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. Because this requirement goes to the court's power, we consider it *sua sponte.* The relevant question is whether the district court's order dismissing the case was a "final decision." If not, we lack the ability to decide the merits of the appeal. *Moya v. Schollenbarger*, 465 F.3d 444, 448 (10th Cir. 2006). But where "the district court's grounds for dismissal are such that the defect cannot be cured through an amendment to the complaint," dismissal is final. *Id.* at 450–51. For this reason, we recognize that "dismissal without prejudice for failure to exhaust administrative remedies is a final decision appealable under [§ 1291]." *Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 798 n.4 (10th Cir. 2025). Satisfied that we have appellate jurisdiction, we proceed to the parties' arguments.

### IV

The arguments on appeal challenge both the district court's denial of remand and its dismissal of the case. Like the district court, we consider these issues in serial, as the "better practice" is to begin with the motion to remand. *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959). Because

cases are removed to federal court by notice rather than motion, motions for remand contest the satisfaction of jurisdictional and procedural hurdles to removal. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996). We therefore look to the relevant jurisdictional and procedural standards to guide us to a decision.

## A

In exercising jurisdiction, the district court relied on diversity of the parties and CAFA. Diversity jurisdiction is available under CAFA in putative class actions if the class contains at least 100 members, there is minimal diversity between the parties, and at least $5 million is at stake. 28 U.S.C. § 1332(d).

Additionally, the removing party must satisfy a procedural standard set out by statute. *See* 28 U.S.C. § 1446. The statute ordinarily requires the removing defendant to file its notice of removal in federal court within 30 days of receipt of the complaint or summons. *Id.* § 1446(b)(1). But if the complaint does not on its face provide a basis for removal, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

It is not enough that a complaint contains "allegations from which the defendant might well have surmised that damages exceeded the jurisdictional

8

floor." *Paros Props. LLC v. Colorado Cas. Ins. Co.*, 835 F.3d 1264, 1269 (10th Cir. 2016). The 30-day clock only begins to run once the "plaintiff provides the defendant with 'clear and unequivocal notice' that the suit is removable." *Id.* at 1270 (quoting *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998)). Here, Extraction removed under section 1446's "other paper" language because, it argues, it was not on notice of the amount in controversy until after discovery commenced. To resolve this appeal, we will need to determine the meaning of the "other paper" language and – in so doing – decide when the 30-day clock began to run.

## B

The existence of removal jurisdiction is a legal question. We thus review the denial of a motion to remand de novo. *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001). Subsidiary legal questions, such as the interpretation of a federal statute, are also reviewed de novo. *Scanlon White, Inc. v. Comm'r*, 472 F.3d 1173, 1175 (10th Cir. 2006).

However, we review for abuse of discretion the district court's decision to disregard the bankruptcy proof of claim because it was raised for the first time in a reply. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015). A district court has acted within its discretion so long as it has not made "an arbitrary, capricious, whimsical, or manifestly unreasonable judgement." *F.D.I.C. v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (quoting *United*

*States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir.1991)). And we may reverse only if we have a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1174 (10th Cir. 2001) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991)). When an argument is raised for the first time in reply, a district court may either grant leave to file a surreply or may disregard the newly raised materials and arguments. *See Conroy v. Vilsack*, 707 F.3d 1163, 1180 n.6 (10th Cir. 2013) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191–92 (10th Cir. 2006); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); and *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998)).

Here, the district court chose the latter path. In making its determination, the district court noted that considering the proof of claim filed in Delaware bankruptcy court would not have changed its ruling, "as Plaintiffs cite no authority to suggest that a paper from a different case can satisfy the requirements of 28 U.S.C. § 1446 in this case." Aplt. App. V at 165 n.5. On appeal, Royalty Owners argue that this was an abuse of discretion because the evidence bore on a non-waivable jurisdictional question.

We do not find the district court's decision to be an abuse of discretion. "This circuit has been very strict in assessing whether the grounds for removal

are ascertainable." *Paros Props.*, 835 F.3d at 1269. In *City of Albuquerque v. Soto Enterprises, Inc.*, this court explained that the existence of subject-matter jurisdiction grants a tribunal the authority to determine a dispute. 864 F.3d 1089, 1092–93 (10th Cir. 2017). Because subject-matter jurisdiction defines the scope of a court's power, the question of its existence may never be waived. *Id.* at 1092. Where a party seeks to remove a case to federal court, it must first establish the existence of subject-matter jurisdiction – here, diversity under 28 U.S.C. § 1332.

Additionally, the party must satisfy "statutory procedural requirements, e.g., timeliness in removal." *Soto Enters., Inc.*, 864 F.3d at 1094. "Untimeliness is a 'statutory flaw,' not a 'jurisdictional defect.'" *Paros Props.*, 835 F.3d at 1273 (quoting *Caterpillar*, 519 U.S. at 73). Because compliance with statutory procedural requirements is "independent from subject-matter jurisdiction," arguments predicated on non-compliance are waivable. *Soto Enters., Inc.*, 864 F.3d at 1094. As a result, "when a court finds that it lacks removal jurisdiction, that finding hardly means it lacks subject-matter jurisdiction – it may or may not." *Id.*

Here, Royalty Owners presented the proof of claim made to the Delaware bankruptcy court as evidence that removal of the case was not timely. *See* 28 U.S.C. § 1446(b)(3). But the timeliness of a litigant's notice of removal is not a jurisdictional question. Instead, the challenge goes to compliance with

11

statutory procedural requirements. Such arguments are waivable. The district court did not abuse its discretion in finding Royalty Owners had waived the argument concerning the proof of claim by not raising or arguing it when it filed the remand motion and instead waiting until the reply.

The district court also correctly construed the removal statute. Royalty Owners argue that the term "other paper," *see* 28 U.S.C. § 1446(b)(3), should be understood to capture papers filed in other courts and litigations. Here, that could mean that the bankruptcy proof of claim began the 30-day clock for removal, so Extraction's notice of removal was untimely filed.

In support of their point, Royalty Owners argue that the statutory language is meant to "encompass *any* document, regardless of its formal origin or means of receipt." Reply Br. at 14. But the statute does not use the term "any document." It says:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

A few points are worth noting. The statute becomes operative only on the satisfaction of a dependent clause: "if the case stated by the initial pleading is not removable." The statute then provides that a notice of removal "may be filed within 30 days after receipt" of certain papers triggering removability. A

12

defendant may remove based on a list of certain documents: "an amended pleading, motion, order or other paper."

Our analysis begins with the enumerated list, which makes no reference to "the initial pleading." To construe the term "other paper," we apply the doctrine of *noscitur a sociis*, which means "a word is known by the company it keeps." *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). We look to the shared characteristics of "an amended pleading, motion," and "order," and impute them to "other paper." *See M. S. v. Premera Blue Cross*, 118 F.4th 1248, 1270–71 (10th Cir. 2024) (collecting cases that apply the *noscitur a sociis* and related *ejusdem generis* canons). The common characteristics of this list include that they are all documents that may be filed in a trial court as part of ongoing litigation. They also are all typically filed after the "initial pleading" referenced in the statutory subsection. The "other paper" must also have been filed in a trial court proceeding following the initial pleading that started the litigation. *See Paros Props.*, 835 F.3d at 1272 ("We agree with other circuits to have considered the matter that a presuit communication is not an 'other paper.'").

The list only takes effect when the dependent clause is triggered: "if the case stated by the initial pleading is not removable." The use of the definite article "the" indicates that the statute does not apply to any initial pleading filed anywhere in any court. There is a particular initial pleading contemplated

13

– the one setting out "the case" in which removability is at issue. Because this triggering, dependent clause defines the scope of the statute, we read the list that follows as applying to papers filed in "the case" at issue.

Such commonsense reasoning is reinforced by the fact that the enumerated list does not itself refer to any "initial pleading." The omission is presumptively intentional and purposeful. *United States v. Gonzales*, 520 U.S. 1, 5 (1997). If the list were meant to apply to any litigation anywhere, it would make sense for the list to begin with the filing that began the case, the "initial pleading." Here, there is no need, because the list only becomes relevant when "the initial pleading" – that is, the complaint giving rise to the removable case – does not itself indicate removability.

We conclude that Congress wrote the statute to cabin the list's meaning within the context and scope of the dependent clause. We hold that the papers in question – including the "other paper" of interest to Royalty Owners – must have arisen from the removed case itself. Thus, a federal bankruptcy filing in Delaware will not trigger removability from a Colorado state court case even when the parties involved are the same in both. Whatever the factual overlap between the two parties, the link is simply too attenuated to fall within the removal statute's requirements.

Our observation accords with the weight of authority, which provides that "documents not generated within the state litigation generally are not

14

recognized as 'other papers,' that can start a 30-day removal period." 14C Mary Kay Kane & A. Benjamin Spencer, *Wright & Miller's Federal Practice & Procedure* § 3731 (Rev. 4th ed.). Although the line drawn by our sister circuits is not perfectly clean, the prevailing rule is that the paper be "'involved in,' not external to, 'the case being removed.'" *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (quoting *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969 (8th Cir. 2007)). We conclude that this general rule is correct. It also aligns with our cases that say we are "very strict in assessing whether the grounds for removal are ascertainable." *Paros Props.*, 835 F.3d at 1269. The Delaware bankruptcy proof of claim is not an "other paper" under the removal statute, so it did not begin the clock for removal.

Royalty Owners argue in the alternative that they gave notice of the amount in controversy during a 2017 case management conference held in connection with the first-filed case in state court (which was dismissed for lack of exhaustion). This argument fails for several reasons. As a threshold matter, it was not properly raised before the district court and is thus forfeited. Royalty Owners did not argue plain error in their opening brief, so we find the argument to also be waived on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011).

Even if we were to consider this argument, we would find that the case management conference was held in a separate case and the transcript from

15

that conference is not an "other paper" for the purposes of this case. Again, our caselaw makes clear that "a presuit communication is not an 'other paper.'" *Paros Props.*, 835 F.3d at 1272. The transcript predates this case by several years. The case management conference transcript is not an "other paper" for the purpose of this case.

Royalty Owners also argue that Extraction waived its right to removal by participating in the state court litigation before filing the notice of removal in federal court. Our general rule is that a party waives its right to remove when it has "adequate notice of the right to remove," *Akin*, 156 F.3d at 1036, and nonetheless "manifests a 'clear and unequivocal' intent to submit the case to the state court's jurisdiction," *Soto Enters., Inc.*, 864 F.3d at 1099. As the foregoing discussion makes clear, Extraction did not have adequate notice of its right to remove until December 2023 at the earliest. Its prior participation in the state court litigation is of no moment. The district court did not err in denying remand.

## V

Having determined that the case was properly removed to and retained in the district court, we now turn to the grant of judgment on the pleadings. The district court ruled based on issue preclusion. On appeal, Royalty Owners contend that the district court should have found issue preclusion inapplicable because, they argue, Extraction waived the issue preclusion argument by

16

failing to raise it before the state court prior to removal. They also argue that the district court's application of the issue preclusion doctrine suffers from three substantive infirmities. We address these contentions in turn.

**A**

Royalty Owners argue that Extraction in the district court waived its argument that issue preclusion applied. The operative complaint relevant for the order on appeal – and the only complaint filed before the federal district court – is the Third Amended Class Action Complaint and Jury Demand. *See* Aplt. App. I at 13. Extraction answered this pleading in federal court on January 12, 2024. The federal court answer asserted as an affirmative defense that "[p]laintiffs' claims are barred by the doctrine of res judicata, or issue preclusion, because the claims at issue in this action have previously been dismissed and Plaintiffs did not appeal those dismissals." *Id.* at 74. But, Royalty Owners argue, Extraction waived the defense by failing to raise it in the state court answer to the second amended complaint.[2]

Royalty Owners provide no authority for the proposition that Extraction is bound forever by the affirmative defenses set out in its initial answer filed

---

[2] The answer to the second amended complaint in state court did plead that "Plaintiffs' claims are barred, in whole or in part, due to estoppel." Aplt. App. III at 274. Because we find waiver not applicable in any event, we see no need to determine whether the answer to the second amended complaint raised the defense of issue preclusion, also known as collateral estoppel.

in state court. We doubt this authority exists. So long as a defendant effectively amends its responsive pleading, whether by right or by leave of court, *see* Fed. R. Civ. P. 15, the amended answer may appropriately add affirmative defenses, including issue preclusion. Indeed, many district courts allow for filing of an amended answer without leave of court any time an amended complaint has been filed. *See Hydro Eng'g, Inc. v. Petter Invs., Inc.*, No. 2:11-CV-00139-RJS, 2013 WL 1194732, at \*2 (D. Utah Mar. 22, 2013) (collecting cases applying the "permissive approach"). Because Royalty Owners do not contend the answer was improperly amended, the defense of issue preclusion was not waived.

Additionally, as the district court accurately noted, "[i]t is well established that a court may raise the issue of preclusion on its own motion, in appropriate cases." *Burrell v. Armijo*, 456 F.3d 1159, 1176 (10th Cir. 2006) (McConnell, J., concurring in the judgment) (collecting authority); *accord Kirby v. OCWEN Loan Servicing, LLC*, 641 F. App'x 808, 811 n.2 (10th Cir. 2016) (affirming *sua sponte* dismissal of complaint based on issue preclusion); *Banks v. Opat*, 814 F. App'x 325, 332 (10th Cir. 2020) (applying issue preclusion *sua sponte*).[3] Application of the doctrine in appropriate circumstances is "fully consistent with the policies underlying res judicata," which protect both defendants and the judiciary from wasteful serial litigation. *Arizona v.*

---

[3] We cite unpublished decisions for their persuasive value only and do not treat them as binding precedent. 10th Cir. R. 32.1(A).

*California*, 530 U.S. 392, 412 (2000). Even if waiver had occurred here, the district court would have been well within its discretion to consider issue preclusion on its own motion. The district court was correct to consider issue preclusion, so we proceed to the merits of this argument.

**B**

We review the grant of a motion for judgment on the pleadings de novo, applying the standard of law that governed in the district court. *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005). The standard is the same as the familiar Federal Rule of Civil Procedure 12(b)(6) standard, which provides that the complaint's well-pleaded allegations are accepted as true and construed in the light most favorable to the plaintiff. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The case may only be dismissed where it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004) (citing *Ramirez v. Department of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

Here, the district court held that collateral estoppel precluded Royalty Owners from relitigating whether they must exhaust their administrative remedies before suing. Because Royalty Owners had neither exhausted remedies nor appealed the prior rulings, the district court granted judgment

19

on the pleadings. On appeal, Royalty Owners argue three points of error. First, they argue, the district court applied federal law of collateral estoppel rather than Colorado state law. Second, they argue, the district court found there was a final determination on the merits where none existed. Third and finally, they argue that the district court erred by failing to find exhaustion would be futile.

The problems for Royalty Owners are forfeiture and waiver. The first of their arguments was neither raised nor passed upon in the district court. Indeed, Royalty Owners treated federal and state authorities as interchangeable in the collateral estoppel context. The argument is thus forfeited. And because they did not argue plain error on appeal, we deem the argument waived. *See Richison*, 634 F.3d at 1130–31.

Royalty Owners' second argument is that because "the prior dismissals of Plaintiffs' claims were not final judgments on the merits, the district court erred in dismissing Plaintiffs' futility argument on collateral estoppel grounds." Op. Br. at 50–51. Royalty Owners also failed to raise this argument in the district court. It is arguable that the district court ruled on this issue because finality is one of the elements of preclusion. The entirety of the district court's analysis was a statement that "[a]lthough [the Colorado state] courts 'never reached the merits, dismissals for lack of jurisdiction preclude future relitigation of th[e] jurisdictional question.'" Aplt. App. V at 178 (third alteration in original) (citation omitted). We would be hard pressed to say that

20

the district court "explicitly consider[ed] and resolv[ed]" the question sufficient for Royalty Owners to evade forfeiture. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019). But we need not decide this point. The district court was correct that a court's finding that it lacks jurisdiction "preclude[s] future relitigation of that jurisdictional question." *Boulter v. Noble Energy Inc.*, 74 F.4th 1285, 1289 (10th Cir. 2023). Whether on the merits or for reason of waiver, Royalty Owners' second argument fails.

We move on to the futility argument. In the district court, Royalty Owners argued *Airport Land* made clear beyond a reasonable doubt that had they tried to exhaust, the Commission would have to deny relief as a matter of law. Thus, by Royalty Owners' view, the district court should have found futility applicable and exhaustion unnecessary. Royalty Owners presented the same argument before this court.

However, the issue of futility was decided by the Colorado state court in the prior lawsuits. *See* Aplt. App. II at 21, 61. The district court relied on those opinions to find Royalty Owners were precluded "from reraising their exhaustion arguments, including arguments about the futility of exhaustion and whether the Parties' dispute turns on contract interpretation." Aplt. App. V at 178. That is, the district court held the futility question was also precluded by prior state court cases. Royalty Owners' futility argument therefore relies on their preclusion argument. And, as we note above, the

21

preclusion argument is a nonstarter. Royalty Owners' arguments seeking to overturn the district court's determinations under Federal Rule of Civil Procedure 12 all fail. We find no error in the district court's order rendering a judgment on the pleadings in favor of Extraction.

## VI

Also pending before this court are two motions filed by Royalty Owners. In their motion to supplement the appendix on appeal, Royalty Owners ask us to consider certain filings from the first two state court matters. *See* Doc. 14 at 2–3. In their motion for leave to file a reply, Royalty Owners narrow the scope of the request to solely the transcript of a case management conference. Doc. 27-1 at 2 n.1. We deny both motions.

As a general matter, the record should be modified "only to the extent it is necessary to 'truly disclose[] what occurred in the district court.'" *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (alteration in original) (quoting Fed. R. App. P. 10(e)). Although we have an inherent equitable power to supplement the record on appeal beyond the scope of Rule 10(e), it is "rare" that we would find such an exception applicable. *Id.* at 1192. Royalty Owners provide no explanation for their failure to provide the transcript to the district court. It was not for lack of availability. The transcript was created well in advance of the district court proceedings and presumably available to Royalty Owners at the time of district court litigation.

We additionally find noteworthy the procedural history from which this request arises. Royalty Owners have sought to distance themselves from the preclusive effects of the state court litigation by serial dismissal and re-filing of complaints. But now, on appeal, they seek to conflate the current matter with those same state court proceedings vis-à-vis the conference transcript. Equity does not favor such an idiosyncratic approach. This is certainly not the rare case in which equity would require that we consider a document not passed upon by the district court. Our determination on this point renders moot the motion to file a reply. Accordingly, we deny both motions.

Finally, we address Royalty Owners' Rule 28(j) filing. Submission of supplemental authority under this rule requires an attorney's implicit certification that the issues presented are warranted by existing law. 10th Cir. R. 46.5(B)(2). Royalty Owners' submission purports to provide notice of two orders by the Commission declining jurisdiction to hear a dispute between the parties to this case that were entered in March 2025. *See generally* Doc. 47. Extraction correctly points out that the two Commission orders cannot affect a jurisdictional determination in this matter because "[f]ederal jurisdiction is determined based on the facts as they existed at the time the complaint was filed." *Boulter v. Noble Energy Inc.*, No. 23-1118, 2024 WL 1526289, at *4 n.2 (10th Cir. Apr. 9, 2024) (unpublished) (alteration in original) (quoting *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223

23

(10th Cir. 2011)). Extraction is also correct that counsel for Royalty Owners in this case were counsel in *Boulter*. Counsel for Royalty Owners were thus aware that their Rule 28(j) submission could not have affected this court's jurisdictional determination. Despite this, Royalty Owners' Rule 28(j) filing mentions neither *Boulter* nor its relevant holding.

Counsel's failure to acknowledge that the orders they filed as supplemental authority could not affect this court's jurisdictional determination raises a concern about a potential lack of candor. This court welcomes parties to provide notice of supplemental authority, which is the purpose of Rule 28(j). However, counsel are reminded that if they provide this notice, they must give us the whole picture and comply with their duty of candor. Failure to do so going forward may result in sanctions including dismissal or affirmance, monetary sanctions, disciplinary proceedings, and payment of attorney's fees. 10th Cir. R. 46.5(C).

**\* \* \***

We find no error by the district court. AFFIRMED.